ROGER G. PERKINS (SBN 86617)
rperkins@mpplaw.com
KRISTINA M. PFEIFER (SBN 234352)
kpfeifer@mpplaw.com
MORRIS POLICH & PURDY, LLP
501 West Broadway, Suite 500
San Diego, California 92101-3544
Telephone: (619) 557-0404
Facsimile:  (619) 557-0460

Attorneys for Third-Parties,
Raymond J. Linovitz, M.D., F.A.C.S. and
Timothy Peppers, M.D.

FILED
'08 APR -8 PM 3: 58
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN TIMBERLAKE and KAREN TIMBERLAKE,<br><br>Plaintiffs,<br><br>v.<br><br>SYNTHES SPINE COMPANY, L.P.,<br><br>Defendant. | CASE NO.:<br>**'08 CV 638 JAH AJB**<br>*[6:08-CV-00004 (S.D. Tex.)]*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD PARTIES RAYMOND J. LINOVITZ, M.D., F.A.C.S.' AND TIMOTHY PEPPERS, M.D.'S MOTION TO QUASH PLAINTIFFS' SUBPOENAS** |

COME NOW Third-Parties Raymond J. Linovitz, M.D., F.A.C.S. and Timothy A. Peppers, M.D. ("Third Parties") and file this Motion to Quash or, in the alternative, Stay Plaintiffs' Third-Party Subpoenas pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure. For the reasons set forth below, Third-Parties request that the Court quash the Subpoenas or, alternatively, stay any required disclosures under the Subpoenas until after the U.S. District Court of Texas (S.D.), the district in which the underlying case is filed, rules on Defendant Synthes Spine Company, L.P.'s ("Synthes") Motion for Protective Order, because the Subpoenas were not properly served, seek information that is irrelevant, privileged and confidential, contain requests that are over broad, and which were served to unduly burden Third-Parties.

/ / /

/ / /

---

**MEMO. OF P'S & A'S IN SUPPORT OF MOTION TO QUASH**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Calvin Timberlake and Karen Timberlake ("Plaintiffs") filed their First Amended Original Complaint ("Amended Complaint") in this alleged products liability action currently pending in the U.S. District Court for the Southern District of Texas, Victoria Division, Civil Action No. 6:08-CV-00004 on February 21, 2008.[1]  Plaintiffs' Amended Complaint asserts claims of negligence, strict liability, breach of warranty, fraud/misrepresentation, and conspiracy arising out of the implantation of the ProDisc artificial disc device, distributed by and manufactured on behalf of Synthes, in Plaintiff Calvin Timberlake.  In addition, Plaintiffs' Amended Complaint names as additional defendants Spine Solutions, Inc., Viscogliosi Brothers, L.L.C., Marc R. Viscogliosi, John J. Viscogliosi, and Anthony J. Viscogliosi. Synthes filed its Answer to Plaintiffs' First Amended Original Complaint and Motion to Dismiss, or in the Alternative to Transfer Venue, on March 13, 2008.  Defendants Viscogliosi Brothers, L.L.C., Marc R. Viscogliosi, John J. Viscogliosi, and Anthony J. Viscogliosi, apparently, have not yet been served with Plaintiffs' Amended Complaint or filed a responsive pleading.  Counsel for Defendant Spine Solutions, Inc. accepted service of Plaintiffs Amended Complaint and was to timely file its responsive pleading on or before March 31, 2008.

The same day that Synthes filed its responsive pleadings, Plaintiffs issued ten third-party subpoenas for production and inspection of documents, including third-party subpoenas to Raymond J. Linovitz, M.D., F.C.A.S. and Timothy A. Peppers, M.D. (the "Subpoenas").[2]  Plaintiffs improperly issued the Subpoenas before all of the Defendants had answered the Amended Complaint, before discovery was to commence, and before the parties discussed a discovery plan required by Rule 26(f).

Third-Parties are not parties in this action and neither Dr. Linovitz nor Dr. Peppers ever examined or treated Plaintiff Calvin Timberlake.  They did not implant the device in Plaintiff. Rather, Drs. Linovitz and Peppers were merely clinical investigators in the FDA-approved clinical trial of the ProDisc prior to its pre-market approval ("PMA") by the Food and Drug Administration ("FDA").

---

[1] A true and correct copy of Plaintiffs' First Amended Complaint is attached hereto as <u>Exhibit A</u>.

[2] True and correct copies of the Subpoenas are attached hereto as <u>Exhibit B and C</u>.

-2-

Plaintiff Calvin Timberlake did not participate in the FDA-approved clinical trial, and the ProDisc device was not implanted in him until after pre-market approval of the ProDisc device by the FDA.

Plaintiffs' Subpoena requests that the Third-Parties produce voluminous, irrelevant documents. Specifically, Plaintiffs seek, *inter alia*, "all documents," with no limit in time or scope to the care and treatment of Plaintiff Calvin Timberlake, including studies, test plans, data, reports, results, conclusions, accounting records, bills, charts, drawings, agreements, communications, correspondence, faxes, summaries of records or telephone conversations, minutes or records of meetings or conferences, lists of persons attending meetings or conferences, bank records, and all other writings concerning:

1. All documents relating to your investment, or potential investment in any company or entity known to you or believed by you to have any relationship, ownership, or other involvement with the ProDisc, including but not limited to any correspondence, solicitations, investor packets, stock certificates, ownership certificates, shareholder agreements, and loan documents.

2. All financial documents relating to your investment in, purchase or sale of your investment in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with the ProDisc, including but not limited to bank records, canceled checks, income tax returns, and loan documentation.

3. All documents relating to any agreements with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform, clinical trials or other trials relating to the ProDisc.

4. All financial documents pertaining to your agreement with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform clinical trials or other trials on the ProDisc.

5. All documents relating to your relationship with Synthes, Inc. or any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to stock ownership, and agreements to market, sell or implant ProDisc.

6. All documents you filed with or provided to the Food and Drug Administration that discuss mention or in any way relate to ProDisc.

7. All documents filed with or provided to the FDA that discloses, discusses or denies that you have or had an ownership interest in any company or entity known to you or believed by you to have any relationship, ownership, or other involvement with ProDisc that has or had a financial interest in ProDisc.

8. All correspondence between you and the FDA that relate in any way to ProDisc.

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

9. All correspondence that relates to ProDisc between you and any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc.

Plaintiffs' Subpoenas, Exhibits B and C.

Third-Parties object to the Subpoenas and each of the nine requests for production of documents specified on the grounds that (1) the Subpoenas were not properly served pursuant to Federal Rules of Civil Procedure, (2) the requests are over broad and unduly burdensome; (3) the information sought is irrelevant and not calculated to lead to the discovery of admissible evidence; (4) the requests seek confidential proprietary and trade secret information; (5) the requests violate privacy regulations issued under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and state privacy laws; and (6) violate Third-Parties' privacy rights under the United States and California Constitutions. Thus, the Subpoenas should be quashed.[3]

## ARGUMENT AND CITATION OF AUTHORITY

**A.  Standard for a Motion to Quash**

Third-Parties timely file this Motion to Quash in accordance with Rule 45 of the Federal Rules of Civil Procedure. Under Rule 45, the nonparty served with the subpoena duces tecum may make objections to the subpoena within 14 days after service. Fed.R.Civ.P. 45(c)(2)(B). On timely motion, the court may quash or modify the subpoena. Rule 45(c)(3)(A); See also, *Moon v. SCP Pool Corp.*, 232 Fed. R. Dec. 633 (C.D. Cal. 2005).

The Federal Courts have held that:

> Discovery may be refused where the burden of the proposed discovery outweighs its likely benefits. . .taking into account such factors as the needs of the case, the parties' resources, the importance of the issues at stake, and the role of the proposed discovery in resolving those rules. [FRCP 26(b)(2); *Cusumano v. Microsoft Corp.* (1st Cir. 1998) 162 F.3d 708, 714.]

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2008), §11:2303.

---

[3]  Additionally, in accordance with FED.R.CIV.P. 26(c), Synthes has moved for a protective order regarding the specific information sought by Plaintiffs' Third-Party Subpoena in the U.S. District Court for the Southern District of Texas, Victoria Division. Third-Parties respectfully request that this Court stay any ruling on this Motion until the Court where this matter is pending rules on Synthes' Motion for Protective Order.

1  Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure authorizes the Court to quash a
2  subpoena that "requires disclosure of privileged or protected matter" or "subjects a person to undue
3  burden." Interpreting this Rule, courts have allowed parties to quash third party subpoenas on the
4  grounds the information sought is not relevant to the subject matter of the action. *See Wiwa v. Royal*
5  *Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Further, "[t]o protect a person subject to or affected
6  by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires disclosing
7  a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P.
8  45(c)(3)(B). Here, the Subpoenas require disclosure of protected information and subject the subpoenaed
9  Third-Parties to undue burden. Therefore, Third Parties seek an order quashing the Subpoenas.[4]

**B.   The Subpoenas Were Not Properly Served on Third Parties.**

Federal Rule of Civil Procedure 45(b)(1) requires that a subpoena be "delivered" to the person being served. Most courts have interpreted this to mean that a subpoena must be *personally* served. *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson* 636 F.2d 1300, 1312-1313 (D.C. Cir. 1980). The Rules do not permit substitute service of a subpoena by, i.e., leaving the subpoena at the deponent's place of business. *Doe v. Hersemann* (N.D. IN. 1994) 155 Fed. R. Dec. 630.

Plaintiffs here served the Subpoenas on Third Parties by leaving the Subpoenas at their place of business with an employee. The Subpoenas were not, therefore, "personally served" as required pursuant to Rule 45(b)(1). Therefore, the Subpoenas were not properly served.

**C.   Plaintiffs' Subpoenas Are Over Broad and Unduly Burdensome.**

The requests in Plaintiffs' Subpoenas are over broad and unduly burdensome and thus should be quashed. "An 'abusively drawn subpoena' may be quashed because it imposes an 'undue burden' on the witness." *Mattel Inc. v. Walking Mountain Productions* (9th Cir. 2003) 353 F.3d 792, 813. [Subpoena quashed because it was drafted "way too broad" and without any attempt to "try to tailor the information request to the immediate needs of the case."]

---

[4] Defendant Synthes has also moved to quash the Subpoenas issued to Third-Parties. It is well-established that a party with a real interest in the documents has standing to raise objections to their production. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)) (noting that a party has standing to challenge a subpoena issued to a non-party when it has a "personal right or privilege with respect to the materials subpoenaed").

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

1   In *Moon, supra*, the Court found the subpoena was burdensome and over broad on its face and exceeded the bounds of fair discovery because the requests sought "(a) information over a ten year or greater period and (b) seek information regarding all pool winter covers, not only those 'within the Far East Region.'" *Id.* at 637.

Here, Plaintiffs did not limit the requests to a particular time period or limit the scope of the requests to specific subjects. The requests are clearly over broad in that Plaintiffs seek documents ranging from Third Parties' personal financial information, to health information of patients treated by Third-Parties in the ProDisc clinical trial, to proprietary clinical trial design, protocol, and implementation documents, to all communication between Third-Parties and anyone at any time involved in any way with the ProDisc. Plaintiffs' Subpoenas are therefore clearly over broad, oppressive, and unduly burdensome.

Further, the *Moon* Court recognized that a subpoena can cause undue burden if the subpoenaing party requests documents from a non-party when it could have more easily and inexpensively obtained the documents from a party to the litigation. *Id.* at 637-638. *See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir.1980) [discovery restrictions may be even broader where target is nonparty]; *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed.Cir.1993) [affirming order requiring party to first attempt to obtain documents from opposing party rather than nonparty].

Plaintiffs' requests at issue here place an undue burden upon the subpoenaed Third-Parties for the same reason. Plaintiffs seek production of virtually any and all documents related to ProDisc that may be in the Third-Parties' possession, which should be and likely are also within the possession of other parties to the action. Plaintiffs have made no attempt to obtain the requested documents from parties before serving Third Parties with Subpoenas. Certainly, it is less expensive and less burdensome for Plaintiffs to obtain these documents from parties to the action than from non-parties, and should have attempted to first do so pursuant to Plaintiffs' obligation to avoid placing an undue burden on a non-party.

/ / /

/ / /

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

**D.  Plaintiffs' Requests Seek Irrelevant Information and Are Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 Fed. R. Dec. 658, 662 (D.Kan.2003). A matter is not discoverable unless it is "relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). "(T)he standard of relevancy is not so liberal as to allow a party to . . . explore matter which does not presently appear germane on the theory it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC* (D.C. Cir. 1007) 103 F.3d 1007, 1012-1013; *Mack v. Great Atlantic & Pac. Tea Co.* 871 F.2d 179, 187 (1st Cir. 1989).

While the standard of relevance in the context of discovery is construed broadly, it is not so broad as to support "fishing expeditions" in discovery, which is apparently what Plaintiffs attempt to conduct via their vague, and sweepingly overbroad Subpoenas. *See, Kadair v. Sony Corp. of America*, 694 F.2d 1017, 1023 (5th Cir. 1983).

The documents and information Plaintiffs seek through their Subpoenas have no relevance to the claims and defenses in this product liability action and are not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs have not limited their requests to a particular scope, i.e., the ProDisc, and ask for information far beyond that which would provide Plaintiffs with information that is relevant to their claims. Plaintiff Calvin Timberlake was never treated by Third Parties or anyone affiliated with their practice. Instead, Third Parties were clinical investigators in the FDA-approved clinical trial of the ProDisc prior to its approval by the FDA. Plaintiff Calvin Timberlake was not a participant in the clinical trial of the ProDisc and was implanted with the ProDisc after its approval by the FDA. Thus, the requested documents that deal exclusively with patients and information not involved in this litigation are not relevant to Plaintiffs' claims, any defense that may be asserted, and are not calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiffs have served the Subpoenas solely for the purpose to unduly burden the Third-Party healthcare providers involved in the FDA-approved clinical trial of the ProDisc.

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

Further, Plaintiffs' requests generally focus on financial information and relationships of the investigators in the FDA-approved clinical trial of the ProDisc. It is the role of the FDA, however, and not Plaintiffs, to monitor the financial interest or relationships of the investigators. *See, e.g.*, 21 Code Fed. Reg. § 812.119 (providing for disqualification of clinical investigators). The Supreme Court has held that there is no private right of action to challenge this role of the FDA, because these types of actions "inevitably conflict with the FDA's responsibility to police fraud ..." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001).[5] None of Third Parties' financial or tax information is relevant to any cause of action or calculated to lead to the discovery of admissible evidence.

In fact, production of these documents would inject irrelevant and potentially prejudicial information into this case, would result in the disclosure of confidential information about unrelated non-parties' investments and finances, and have no effect on, or relationship to, Plaintiffs or Plaintiffs' allegations. Therefore, this Court should forbid, or at least limit in scope, Plaintiffs' Subpoenas.

### E. Plaintiffs' Subpoenas Seek Confidential and Privileged Information.

A major limitation on permissible discovery is that the information sought not be privileged. Discovery of privileged matters goes beyond the legitimate scope of discovery even if relevant to a party's claims or defenses. FED. R. CIV. P. 26(b)(1).

Federal Rule of Civil Procedure 45(c)(3)(B)(i) specifically provides that a court should quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." Such confidential commercial information warrants special protection under FED. R. CIV. P. 26(c)(1)(G). *See Micro Motion*, 894 F.2d at 1323 (citing *Smith & Wesson v. United States*, 782 F.2d 1074, 1082 (1st Cir. 1986)). The production of information and testimony Plaintiffs seek would cause major competitive harm to Third-Parties and Synthes. The California Civil Code defines a trade secret as information that: "Derives independent economic value

---

[5] As Synthes points out in its Brief in Support of its Motion To Quash, or in the alternative, Stay Plaintiff's Third-Party Subpoena, Plaintiffs' requested documents are also irrelevant to the underlying suit and cannot lead to the discovery of relevant information because: (1) the financial information requested is not relevant to the device approval process, (2) once a device is approved by the FDA, causes of action based on pre-approval submissions or non-submissions are preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001); and (3) all the causes of actions at issue are preempted, as a matter of law, by *Riegel v. Medtronic, Inc.*, No. 06-179, 552 U.S. (Feb. 20, 2008).

-8-

1  (actual or potential) from not being generally known to the public or others who can obtain economic
2  value from its disclosure or use; and, is the subject of reasonable efforts to maintain its secrecy." Civ.
3  Code §3426.1(d)(1) & (2); *American Credit Indem. Co. v. Sacks* (1989) 213 Cal.App.3d 622, 631.

4      Courts have considered information relating to implantable medical devices, like ProDisc, trade
5  secrets. *See, e.g., Medtronic, Inc. v. Guidant Corp.*, No. 00-1473, No. 00-2503, 2001 WL 34784493 (D.
6  Minn. 2001) [highly sensitive trade secrets and research information regarding implantable atrial
7  defibrillators "must be protected."]

8      The document requests here require Third Parties to disclose trade secrets and confidential
9  proprietary information related to the FDA-approved clinical trial of ProDisc. All nine requests
10 specifically seek information that has not been released to the public and is proprietary and confidential.
11 For instance, Plaintiffs' request that Third-Parties produce "all correspondence that relates to ProDisc
12 between you and any company or entity known to you or believed by you to have any relationship,
13 ownership or other involvement with ProDisc." This overly broad request requires Third-Parties to
14 reveal proprietary clinical trial design, protocol, and implementation documents related to the FDA-
15 approved clinical trial of the ProDisc in their possession. This is just one example of Plaintiffs'
16 numerous, over broad requests that Third-Parties cannot respond to without divulging confidential and
17 protected information in direct contravention of Federal Rule of Civil Procedure 45(c)(3)(B)(i).

18     Plaintiffs' Requests nos. 6, 8, and 9 seek confidential patient information protected from
19 disclosure by the privacy regulations issued under the Health Insurance Portability and Accountability
20 Act of 1996 ("HIPAA") and California's physician-patient privilege.

21     These requests violate the purpose and intent of HIPAA. Congress enacted HIPAA "to ensure
22 the integrity and confidentiality of patients' information and to protect against unauthorized uses or
23 disclosures of the information." *In re Vioxx Products Liability Litigation*, 230 Fed. R. Dec. 473, 477
24 (E.D.La. 2005) (citing 42 U.S.C. § 1320d-2(2)(A) &(B)(ii)). The United States Department of Health
25 and Human Services under directions from Congress in the HIPAA legislation promulgated
26 comprehensive regulations to protect the privacy of personal medical records. *Id.* The regulations most
27 pertinent to this motion now appear at 45 Code of Federal Regulations parts 164 and 165, and are
28 commonly referred to as the "Privacy Rule." Accordingly, HIPAA forbids healthcare providers and

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

1  other "covered entities" from using or disclosing an individual's protected health information in
2  response to a request for production of documents in litigation without (1) a HIPAA-compliant
3  authorization; (2) a court order; or (3) certain satisfactory assurances accompanied by a proper request
4  for production. *See* 45 Code. Fed. Reg. 160.103, 164.104(a), 164.502(a). Under HIPAA, "protected
5  health information" includes health information "which identifies (or reasonably could be used to
6  identify) the individual, and that which relates to the individual's past, present, or future physical or
7  mental health or condition; the provision of health care to the individual; or the past, present, or future
8  payment for the provision of health care." 45 Code Fed. Reg. § 160.103.

   The requests also require disclosure of documents protected by California's physician-patient
   privilege. In California, the general rule is that privileged information is not discoverable. *Greyhound
   Corp. v. Superior Court* (1961) 56 Cal.2d 355, 395; Code Civ.Proc. §§ 2016, subd. (b), 2031.

   California Evidence Code section 992 defines confidential communication as

   > [I]nformation, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship.

   The purpose of the privilege protecting a patient's confidential medical information is to ensure a "zone
   of privacy...to preclude humiliation of the patient which might follow disclosure of his ailments and to
   encourage patient's full disclosure to the physician of all information necessary for effective diagnosis
   and treatment." *Division of Medical Quality, Bd. of Medical Quality Assur. v. Gherardini* (1979)
   Cal.App.3d 669.

   Under Evidence Code section 994, the patient is the holder of the privilege, but the physician
   must assert the privilege on the patient's behalf. Evidence Code §995; see also, California Business &
   Professions Code §2263. The person asserting the privilege has the benefit of a presumption that the
   communication was made in confidence, thus shifting the burden to the opposing party to establish it
   was not confidential. Evidence Code §917. "Once the claimant establishes the preliminary facts...the
   burden of proof shifts to the opponent of the privilege. To obtain disclosure, the opponent must rebut the

statutory presumption of confidentiality set forth in [Evidence Code] section 917 [, subdivision (a). ]." *Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 442.

The privilege protects the disclosure of statements by the patient or the physician, including adverse drug reaction reports communicated in confidence by the patient to the physician. *Rudnick v. Superior Court* (1974) 11 Cal.2d 924, 930.

By seeking documents filed with or provided to the FDA regarding the Third-Parties' involvement in clinical trials of the ProDisc, Plaintiffs' Subpoenas necessarily seek protected healthcare information of all the individual *patients* under Third Parties' care during the clinical trials, none of whom are related to this case or have authorized the release of their confidential information. Plaintiffs' Subpoenas were not accompanied by authorizations from Third Parties' patients or a court order, nor did Plaintiffs provide the necessary satisfactory assurances along with their Subpoenas. Thus, to the extent that Plaintiffs' Subpoenas request individual healthcare information from these Third-Parties, the HIPAA Privacy Rule and California law forbid production of documents disclosing such information.

**F.  Plaintiffs' Subpoenas Seek Constitutionally-Protected Information Regarding Third-Parties.**

Plaintiffs' Subpoenas violate the right of Third Parties' privacy because the requests seek disclosure of confidential and/or protected information regarding Third-Parties' corporate, financial, tax and/or commercial affairs. The United States and California Constitutions both protect Third-Parties' rights to privacy in such information, and Plaintiffs have not asserted any compelling reason why the privilege should not be maintained.

Federal courts generally recognize a right of privacy that can be raised in response to discovery requests. *Johnson v. Thompson,* 971 F.2d 1487, 1497 (10th Cir. 1992); *DeMasi v. Weiss* 669 F.2d 114, 119-120 (3rd Cir. 1982). Under Federal Rules, the court "must" quash or modify a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies. Fed. R. Civ. P. 45(c)(3)(A)(iii).

In diversity actions, state law provides the rule of decision in privacy claims. Fed. R. Evid. 501; *Oaks v. Halvorsen Marine Ltd,.* 179 Fed. R. Dec. 281, 284 (C.D. Cal. 1998). California recognizes that deponents have privacy protections relating to tax information (*Rifkind v. Sup. Ct.* (1981) 123

-11-

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH


Cal.App.3d 1045); and financial information (Cal. Civ. Code §3295). Although, the right to privacy is not absolute under California law, it is protected unless the subpoenaing party can show a compelling public interest. *Ragge v. MCA/Universal Studios* 165 Fed. R. Dec. 601, 604 (C.D. Cal. 1995). Thus, discovery of income tax returns will not be compelled unless the party seeking disclosure can show the information is both relevant and there is a compelling need for the production of the tax returns. *Gattegno v. PriceWaterhousecoopers, LLP,* 205 Fed. R. Dec. 70, 73 (D. CT. 2001). See also, *Trudeau v. New York State Consumer Protection Board,* 237 Fed. R. Dec. 325, 331-332 (N.D. N.Y. 2006).

Here, Third Parties' tax returns and financial information are protected by the right to privacy. The information therein is not relevant to the issues in the present case and Plaintiffs' have not even attempted to demonstrate any compelling need for production of the information. Thus, Third Parties are entitled to invoke their right to privacy to prevent the disclosure of this information.

## CONCLUSION

Third-Parties do not contest Plaintiffs' right to seek discovery from third-parties, as a general premise. That discovery, however, must be conducted at the appropriate time, be relevant to the litigation, serve a legitimate purpose and be conducted without exposing to the public confidential trade secrets or patients' protected health-care information. Here, Plaintiffs' overly broad and improper requests do not serve such purposes.

Accordingly, Third-Parties respectfully request that the Court quash Plaintiffs' Third-Party Subpoenas. Alternatively, Third-Parties respectfully request that the Court stay any ruling on the Subpoenas until the U.S. District Court of Texas (S.D.), the district in which the underlying case is filed, rules on Defendant Synthes' Motion for Protective Order.

Dated: This 8th day of April, 2008          Respectfully submitted,

MORRIS, POLICH & PURDY, LLP

BY: *[signature]*
ROGER G. PERKINS
RPERKINS@MPPLAW.COM
KRISTINA M. PFEIFER
KPFEIFER@MPPLAW.COM
ATTORNEYS FOR THIRD-PARTIES,
RAYMOND J. LINOVITZ, M.D. F.A.C.S. AND
TIMOTHY A. PEPPERS, M.D.

MEMO. OF P'S & A'S IN SUPPORT OF
MOTION TO QUASH

## CERTIFICATE OF CONFERENCE

I, Kristina M. Pfeifer, certify that on April 7, 2008, I met and conferred with Plaintiffs' counsel, James W. Cole, via telephone in good faith as to this Motion to Quash Plaintiffs' Subpoenas to Raymond J. Linovitz, M.D. F.A.C.S. and Timothy A. Peppers, M.D. Mr. Cole indicated he would not withdraw the Subpoenas.

Dated: This 8th Day of April 2008

*[signature]*
Kristina M. Pfeifer, Esq.