1    ROGER G. PERKINS (SBN 86617)
rperkins@mpplaw.com
2    KRISTINA M. PFEIFER (SBN 234352)
kpfeifer@mpplaw.com
3    MORRIS POLICH & PURDY, LLP
501 West Broadway, Suite 500
4    San Diego, California 92101-3544
Telephone: (619) 557-0404
5    Facsimile: (619) 557-0460

FILED

08 APR -8 PM 3: 58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

6    Attorneys for Third-Parties,
Raymond J. Linovitz, M.D., F.A.C.S. and
7    Timothy Peppers, M.D.

8                **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10    CALVIN TIMBERLAKE and KAREN
TIMBERLAKE,
11

12            Plaintiffs,

13    v.

14    SYNTHES SPINE COMPANY, L.P.,

15            Defendant.

16

17

CASE NO.:

**'08 CV 638 JAH AJB**

*[6:08-CV-00004 (S.D. Tex.)]*

**DECLARATION OF KRISTINA M. PFEIFER IN SUPPORT OF THIRD PARTIES RAYMOND J. LINOVITZ, M.D., F.A.C.S.' AND TIMOTHY PEPPERS, M.D.'S MOTION TO QUASH PLAINTIFFS' SUBPOENAS**

18       I, Kristina M. Pfeifer, declare that:

19       1.     I am an attorney at law duly licensed to practice law before all courts of the State of

20   California and am admitted to practice in the United States District Court for the Southern District of

21   California. I am an associate attorney in the law firm of Morris Polich & Purdy LLP, which was

22   recently retained as counsel for Third Parties Raymond J. Linovitz, M.D., F.A.C.S. and Timothy

23   Peppers, M.D. ("Third Parties.") in the above entitled case. I am one of the attorneys responsible for

24   representing Third Parties and I have personal knowledge of the facts and matters set forth herein and, if

25   called as a witness to testify to these matters, I could do so competently.

26       2.     Attached hereto as Exhibit A is a copy of Plaintiff's First Amended Original Complaint

27   filed in U.S. District Court, Southern District of Texas, Victoria Division, Case No. 6:08-CV-00004.

28       3.     Attached hereto as Exhibit B is a copy of the Subpoena in Civil Case, issued by the United

States District Court, Southern District of California, served on Raymond J. Linovitz, M.D., F.A.C.S.

**DECL. OF K. PFEIFER IN SUPPORT OF
MOTION TO QUASH**

1        4.    Attached hereto as Exhibit C is a copy of the Subpoena in Civil Case, issued by the United

2    States District Court, Southern District of California, served on Timothy A. Peppers, M.D., F.A.C.S.

3        I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct.

5        Executed this 8th day of April, 2008 at San Diego, California.

6

7

8    Kristina M. Pfeifer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECL. OF K. PFEIFER IN SUPPORT OF
MOTION TO QUASH**

**EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| CALVIN TIMBERLAKE AND | § | |
| KAREN TIMBERLAKE | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:08-CV-00004 |
| | § | JURY REQUESTED |
| SYNTHES SPINE, INC. AND | § | |
| SYNTHES NORTH AMERICA, INC. | § | |
|     Defendants | § | |

### PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **CALVIN TIMBERLAKE AND KAREN TIMBERLAKE**, Plaintiffs, complaining of **SYNTHES SPINE COMPANY, L.P., SPINE SOLUTIONS INC., VISCOGLIOSI BROTHERS L.L.C., MARC R. VISCOGLIOSI, JOHN J. VISCOGLIOSI AND ANTHONY G. VISCOGLIOSI**, herein collectively referred to as "Defendants" and would show the Court as follows:

#### I. Parties

1.    Plaintiffs, **CALVIN TIMBERLAKE AND KAREN TIMBERLAKE**, are residents of Victoria County, Texas.

2.    Defendant, **SYNTHES SPINE COMPANY, L.P.** is an entity doing business in the State of Texas. No service is necessary at this time.

3.    Defendant, **SPINE SOLUTIONS INC.**, is an entity doing business in the State of Texas, and may be served with citation by serving, Anthony G. Viscogliosi, at 505 Park Avenue, 14th Floor, New York, NY 10022.

Case 3:08-cv-00638-JAH-RJB    Document 1-3    Filed 04/08/2008    Page 5 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 3 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 2 of 16

4.    Defendant, **VISCOGLIOSI BROTHERS L.L.C.,** is an entity doing business in the State of Texas, and may be served with citation by serving, Anthony G. Viscogliosi, at 505 Park Avenue, 14th Floor, New York, NY 10022.

5.    Defendant, **MARC R. VISCOGLIOSI,** is an individual resident of the State of New York doing business in the State of Texas and may be served with citation at 505 Park Avenue, 14th Floor, New York, NY 10022.

6.    Defendant, **JOHN J. VISCOGLIOSI,** is an individual resident of the State of New York doing business in the State of Texas and may be served with citation at 505 Park Avenue, 14th Floor, New York, NY 10022.

7.    Defendant, **ANTHONY G. VISCOGLIOSI,** is an individual resident of the State of New York doing business in the State of Texas and may be served with citation at 505 Park Avenue, 14th Floor, New York, NY 10022.

## II. Statement of the Case

8.    This is a Personal Injury - Product Liability action based in tort on the theories of common law and statutory fraud/misrepresentation, violation of the FDA approval process, negligence, strict liability for a dangerous and defective product and breach of warranty.

## III. Jurisdiction

9.    The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/08/2008    Page 6 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 4 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 3 of 16

IV. Venue

10.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391

because the incident made the basis of this suit occurred in the Southern District of Texas, and

the Plaintiffs resides in Victoria County in the Southern District of Texas.

V. History Regarding Plaintiff Calvin Timberlake

11.    In 2005 Calvin Timberlake was a forty-nine year old fork lift driver. Mr.

Timberlake had suffered back pain and undergone treatment for the back pain for several years.

12.    Mr. Timberlake had been diagnosed as with degenerative disc disease of the disc

between the 4th and 5th lumbar vertebras (L4-L5 disc). Mr. Timberlake had conservative

treatment over a period of years which included physical therapy, medications and injections

without significant relief.

13.    Mr. Timberlake began researching treatment options on the Internet in

consultation with his treating doctor. Mr. Timberlake learned of an artificial disc called the

ProDisc, which could be inserted in place of the degenerated disc, and which artificial disc was

then and is still now manufactured by or on behalf of Synthes Spine Company, L.P. The surgery

involved removing the degenerated disc. The artificial disc consist of two metal ends which are

attached to the vertebrae above and below the removed disc and a polypropylene insert that was

placed between the two end plates.

14.    When Mr. Timberlake learned of the ProDisc it had not been approved by the

Food and Drug Administration (FDA) but was undergoing clinical trials. Mr. Timberlake read

multiple reports of the successes of the ProDisc artificial disc trials. Mr. Timberlake read that

the ProDisc had been through rigorous testing conducted by numerous doctors with fantastic

results. Included in the doctors and clinics conducting the clinical trials was one presided over

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/08/2008    Page 7 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 5 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 4 of 16

by Dr. Jack Zigler at The Texas Back Institute in Plano, Texas. (At this time Mr. Timberlake was totally unaware that many of the doctors performing the trials, including Dr. Zigler, were investors in Spine Solutions Inc. – either directly or as investors in funds that invested in the company – and those doctors thereby had a large financial interest in the outcome of the trials.)

15.    Mr. Timberlake read claims by Dr. Zigler that he had presided over the study of the ProDisc. Dr. Zigler and others claimed the ProDisc had been found to result in significantly better outcomes than the alternative treatments. Mr. Timberlake read claims made by the defendants, and substantiated by the doctors performing the studies that the ProDisc would provide him a faster recovery and allow him to return to work faster. Defendants intentionally caused physicians implanting the device, the public, the FDA and Mr. Timberlake to erroneously believe that the studies were independent studies, performed by disinterested physicians. In reality, however, many of the physicians performing the studies and making the representations had a financial interest in the results of the studies.

16.    In addition to being unaware that many of the doctors participating in the clinical trials had a financial outcome, he was unaware that the doctors had intentionally left out of the reported results of the studies a large number of patients who had received implantation of the ProDisc, many of whom, upon information and belief, had outcomes less favorable than those that were included in the reports of the studies. Mr. Timberlake was also unaware that there was no acceptable salvage surgery in the event that the artificial disc failed and that removing a failed artificial disc would be a life threatening surgery.

17.    Based on the representations made by the defendants and the doctors who performed the studies, including Dr. Zigler, on June 20, 2006, Mr. Timberlake saw Dr. Christoph Meyer at the Houston Center for Spinal Reconstruction and Disc Replacement, for the purpose

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/08/2008    Page 8 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 6 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 5 of 16

of discussing implantation of the ProDisc artificial disc. Mr. Timberlake was informed the ProDisc had not been approved by the FDA but it should be in the near future. Mr. Timberlake elected to delay any surgery until such time that the ProDisc received FDA approval.

18.    On August 14, 2006, the FDA approved the ProDisc for use.

19.    On or about December 14, 2006, Calvin Timberlake had lumbar spinal surgery at the L4-L5 level at Foundation Surgical Hospital in Bellaire, Texas, performed by Dr. Christoph Meyer. The surgery consisted of a total disc replacement using a ProDisc which was manufactured and sold by Defendants.

20.    On December 19, 2006, five days after the disc was implanted, x-rays revealed it had completely failed.

21.    On April 4, 2007, less than four months after having the ProDisc implanted, Calvin Timberlake underwent a salvage operation to remove the failed ProDisc artificial disc. The disc was found to have come completely apart. The polypropylene insert in the disc had become dislodged from the metal end plates and attached to the iliac vein. Vascular surgeon, Dr. Mickey Morgan M.D. performed the multi-hour surgery attempting to gain control of the bleeding of the vein. After three hours of attempting to gain control of the bleeding, Dr. Morgan called in a second vascular surgeon to assist him because of the difficulty of gaining control of the bleeding. Once the bleeding was controlled, the end plates of the failed ProDisc were removed.

22.    Because of the complications in the surgical removal, the surgeon was unable to complete the fusion at that time. On April 10, 2007 Mr. Timberlake was returned to surgery where the fusion of the L4 and L5 vertebras was completed with the insertion of hardware.

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/28/2008    Page 9 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 7 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 6 of 16

23.    The failure of the ProDisc resulted in bilateral fractures of the vertebral pedicles at L4 and permanent disabling pain.

### VI. History Regarding ProDisc,
### Viscogliosi Brothers L.L.C., Marc R. Viscogliosi, John J. Viscogliosi, Anthony G. Viscogliosi,
### Spine Solutions Inc. and Synthes Spine Company, L.P.

24.    In the late 1980s, a French physician named Dr. Thierry Marnay, designed an artificial inter-vertebral disc now known as the ProDisc. A French company, Aesculap AG & Co. KG, obtained the rights to the ProDisc.

25.    In 1999 Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi established Viscogliosi Brothers L.L.C. in New York City as a venture capital/private equity and merchant banking firm.

26.    That same year, 1999, Viscogliosi Brothers L.L.C. (VB) and Aesculap AG & Co. KG formed Spine Solutions, Inc. The goal of Spine Solutions Inc. was the commercialization of the ProDisc artificial disc. Under the terms of the joint venture, VB furnished the capitalization and Aesculap contributed the patents and related intellectual property rights to the ProDisc technology.

27.    VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi predicted the newly developed artificial disc would grow to a $3 billion market by 2008 and a $12 billion market by 2010.

28.    It was the position of VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi that once the ProDisc reached "semi-advanced technology" status Spine Solutions Inc. would be purchased by one of three large medical device manufacturers, resulting in a

Case 3:08-cv-00638-JAH-AJB     Document 1-3     Filed 04/08/2008     Page 10 of 45
Case 6:08-cv-00004     Document 22-2     Filed 03/27/2008     Page 8 of 17
Case 6:08-cv-00004     Document 8     Filed 02/21/2008     Page 7 of 16

substantial profit. To become marketable, the ProDisc needed to reach preliminary approval by the FDA and be in clinical trials.

29. Developing and testing the ProDisc was extremely expensive. To obtain the necessary financing Spine Solutions Inc., VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi, hired a team of employees and consultants to, along with Spine Solutions, Inc., VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi, solicit investors. As part of the process VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi also formed at least four different investment funds that would invest in Spine Solutions Inc., including: Spine Solutions Partners, Spinal Partners I, Spinal Partners II and Spinal Partners III.

30. By at least as early as May of 2001, VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi were all in extremely dire financial condition. Capital had been exhausted. On information and belief, the principals in VB, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi began embezzling investor funds in order to pay their personal and business expenses as well as to support their personal lavish lifestyle.

31. In or about September of 2002, the Federal Bureau of Investigation (FBI), The United States Attorney's Office, New York State Attorney General's Office and the Manhattan District Attorney's Office became aware that Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi, the principals in VB, were embezzling investor funds and a criminal prosecution was begun.

32. VB, through Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi, communicated to its employees and consultants that unless Spine Solutions Inc. and ProDisc could be sold very rapidly, everyone would be out of a job.

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/02/2008    Page 11 of 45
    Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 9 of 17
        Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 8 of 16

33.    VB principals, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi were faced with a criminal investigation and possible criminal indictment.

34.    VB and its principals, Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi were under tremendous pressure to achieve ProDisc implantations, get FDA approval, and sell Spine Solutions Inc. to obtain funds to repay the embezzled funds to prevent financial ruin and likely criminal indictment.

### VIII. Doctors performing Clinical Trials "in our pocket"

35.    In an attempt to protect themselves from financial ruin and criminal indictment VB, Marc R. Viscogliosi, John J. Viscogliosi, Anthony G. Viscogliosi and Spine Solutions Inc. instructed their employees and consultants to seek physicians who would agree to invest in the companies and at the same time participate in the clinical trials required for FDA approval. These actions were taken without regard for the scientific validity of the outcome of the studies or the health of patients who were then or later implanted with the ProDisc.

36.    Officers of both VB and Spine Solutions Inc., including Marc R. Viscogliosi, John J. Viscogliosi and Anthony G. Viscogliosi, stated that by having doctors participating in the trials while investing in the company would result in (A) more readily obtaining additional investors and (B) having the doctors doing the trials "in our pocket" and thereby ensure an outcome favorable to the defendants. VB, its principals, and Spine Solutions Inc. thereby knowingly and intentionally set up an inherent conflict between the investor/doctors performing the trials and the reporting of results adverse to their personal financial interest.

37.    On October 3, 2001, the first implant of a ProDisc in the U.S. was performed as part of clinical trials at The Texas Back Institute in Plano, Texas by Dr. Jack Zigler. No disclosure was made to the FDA, the public, physicians or to Calvin Timberlake that The Texas

Back Institute, Dr. Zigler and other physicians practicing at the Texas Back Institute were investors and would gain financially if the ProDisc was approved by the FDA.

38.    VB and Spine Solutions Inc. were successful in locating approximately a dozen doctors and clinics who agreed to invest in the company while also participating in the clinical trials.

39.    On January 7, 2003, Spine Solutions reported a "rapid growth in ProDisc qualified surgeons in 2002."

40.    On or about February 6, 2003 Synthes agrees to purchase Spine Solutions Inc. for $350,000,000.  Synthes agreed to pay $175,000,000 at closing and another $175,000,000 upon FDA approval.

41.    During the time that Calvin Timberlake was considering and evaluating the ProDisc, and thereafter while he was awaiting its FDA approval, so that he could receive the ProDisc, it was never disclosed to him that many of the doctors performing the clinical trials that he was waiting to be completed stood to share in $175,000,000 if the approval came through.

42.    Defendants made misrepresentations and intentionally provided incomplete and erroneous information to the FDA, patients, non-investing doctors and the general public regarding the clinical trials, the performance capabilities of the ProDisc, the safety of the ProDisc, problems with the disc's design and performance.

43.    Defendants made intentional express representations to doctors, patients, the general public and Calvin Timberlake regarding the disc that exceeded the performance capabilities presented by the defendants to the FDA.  These representations were false and were intended to induce persons such as Calvin Timberlake to have a ProDisc implanted.  As a result of the representations Calvin Timberlake had the ProDisc implanted.

Case 3:08-cv-00638-JAH-AJB    Document 1-3    Filed 04/08/2008    Page 13 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 11 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 10 of 16

44.    On information and belief, Synthes was aware, prior to approval of the ProDisc by the FDA and prior to a ProDisc being implanted in Calvin Timberlake, of the improprieties committed by VB, Marc R. Viscogliosi, John J. Viscogliosi, Anthony G. Viscogliosi and Spine Solutions Inc., in intentionally soliciting doctors to invest in ProDisc and participate in the trials knowing there was an inherent conflict created by using doctors who were investors whom stood to gain financially from the outcome of the trials. Synthes was also aware of the allegations of embezzlement of investor funds by VB, Marc R. Viscogliosi, John J. Viscogliosi, Anthony G. Viscogliosi prior to approval of the ProDisc by the FDA and prior to a ProDisc being implanted in the Calvin Timberlake.

45.    In February of 2008 the New Jersey Attorney General issued subpoenas to Synthes Spine Inc. and Viscogliosi Brothers L.L.C. seeking information from January 1, 1999 through the present. The subpoenas seek information concerning physicians who had invested in ProDisc also participating in, and the results of, clinical studies of ProDisc.

## VIII

### Count 1 – Fraud/ Misrepresentation

46.    Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth herein.

47.    Defendants made the following intentional, material misrepresentations and committed fraud in:

a.    Intentionally misrepresenting and failing to disclose to the FDA, to the public, to surgeons who were not investors in the companies, and to Calvin Timberlake that doctors and clinics that were participating in the clinical trials would benefit financially if the FDA approved the device and from the sale of the devices; and

    b.         Intentionally misrepresenting and failing to disclose to the FDA, to the public, to surgeons who were not investors in the companies, and to Calvin Timberlake that Dr. Jack Zigler, the lead investigator for the ProDisc FDA trials and the lead author on published results and his clinic, The Texas Back Institute and other doctors at the Texas Back Institute would benefit financially if the FDA approved the device and would benefit from the sale of the devices; and

    c.         Intentionally misrepresenting the nature, history and result of the clinical trials; and

    d.         Intentionally providing to the FDA, to the public, to physicians, and to Calvin Timberlake, incomplete and misleading information concerning its clinical trials; and

    e.         Intentionally making false representations to the FDA, to the public, to physicians, and to Calvin Timberlake regarding the performance capabilities of the ProDisc; and

    f.         Intentionally failing to disclose to the FDA, to the public, to physicians, and to Calvin Timberlake problems with ProDisc's design and performance; and

    g.         Intentionally making express representations to doctors, patients and the general public concerning ProDisc safety and effectiveness, which exceeded the performance capabilities presented by the defendants to the FDA; and

    h.         Intentionally making express, representations to doctors, patients and the general public which were never considered by the FDA.

    48.    The intentional misrepresentations set forth above were done to induce Calvin Timberlake to have the ProDisc implanted and to induce his physician to implant the ProDisc.

    49.    The misrepresentations set forth were done intentionally with knowledge they were false when made.

50.    Calvin Timberlake justifiably relied on the misrepresentations in his decision to have the ProDisc implanted.

51.    Plaintiffs sustained injuries and damages as set forth below as a proximate result of the fraud and misrepresentations.

### Count II – Negligence

52.    Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth herein.

53.    Plaintiffs plead further and in the alternative that Plaintiffs' injuries were directly and proximately caused by the negligence of the Defendants. At the time and place in question, Defendants were guilty of many acts of negligence, each of which jointly and severally proximately caused the serious injuries suffered by Plaintiffs. Plaintiffs allege Defendants were negligent in the manufacturing and the labeling of the ProDisc and in addition that the manufacture and labeling were not as approved by the FDA and as such violated federal law.

54.    Plaintiffs allege the Defendants negligently failed to comply with the process set forth by the FDA for approval of medical devices such as the ProDisc. This failure was done with conscious disregard for those who would have the ProDisc implanted in the future.

55.    Plaintiffs allege that the Defendants and/or their agents, servants, and/or employees were negligent in designing, manufacturing, labeling and marketing the ProDisc involved in the occurrence in question. Defendants were negligent in various acts and omissions, which negligence was the proximate cause of the occurrence in question.

56.    Plaintiffs sustained injuries and damages as set forth below as a proximate result of the negligence of the Defendants.

### Count IV - Strict Liability in Tort-Products

57.     Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth herein.

58.     Plaintiffs allege that the ProDisc as manufactured, designed, labeled and marketed by Defendants, was defective and unsafe for its intended use. Plaintiffs allege the ProDisc that was implanted in Calvin Timberlake was not manufactured and labeled as approved by the FDA. In this connection, the ProDisc was unreasonably dangerous to Calvin Timberlake. Plaintiffs therefore invoke the doctrine of strict liability in §82.001 et seq. of the Texas Civil Practice and Remedies Code and Restatement (second) of the Law of Torts 4.01A and as adopted by the Supreme Court of Texas. Further, in this connection, Plaintiffs allege that the defects of the ProDisc were producing causes of the injuries and damages set forth below.

59.     Plaintiffs allege Defendants circumvented the Pre-Marketing Approval process set out by the FDA. Plaintiffs allege the Defendants provided financial incentives to physicians who were performing the pre-marketing testing and evaluation. Plaintiffs allege providing financial incentives to physicians performing the testing and evaluation is a direct violation of the FDA approval process or in the alternative a violation of the implied purpose of the FDA Pre-Market Approval process.

60.     The circumvention of the Pre-Market Approval process by the Defendants allowed the Defendants to market in the United States a device that is inherently dangerous.

61.     Plaintiffs allege that the defects of the ProDisc were producing causes of the injuries and damages set forth below.

<u>Count VI - Breach of Warranty</u>

62.    Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth herein.

63.    In addition, the Defendants made express warranties to the public generally, and specifically to Plaintiffs.    The Defendants breached the warranties.    Plaintiffs relied upon these express warranties. Plaintiffs sustained injuries and damages as set forth below as a proximate result of the breach of these warranties.

<u>Count VI - Conspiracy</u>

64.    Plaintiffs incorporate all other paragraphs of this complaint as if fully set forth herein.

65.    Defendants acted together to perpetuate an unlawful conspiracy to the damage of the Plaintiffs. Defendants had knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to the Plaintiffs as set forth below.

66.    From the inception, the Defendants were aware of the harm to patients such as Calvin Timberlake that would likely result from their conduct.

<u>IX. Damages</u>

67.    As result of the above described, Calvin Timberlake, suffered severe personal injuries causing him to sustain permanent bodily impairment, disfigurement, loss of earning capacity in the past, and a loss of earning capacity in the future.  Mr. Timberlake has experienced physical pain and mental anguish and will, in reasonable probability, continue to do so in the future.  Mr. Timberlake has been caused to incur medical charges and expenses in the past and will continue to incur medical expenses in the future for his injuries.

Case 3:08-cv-00638-JA    AJB    Document 1-3    Filed 04/08/2008    Page 18 of 45
Case 6:08-cv-00004    Document 22-2    Filed 03/27/2008    Page 16 of 17
Case 6:08-cv-00004    Document 8    Filed 02/21/2008    Page 15 of 16

68.    Prior to and at the time of the accident made the basis of this suit, Plaintiffs,
Calvin Timberlake and Karen Timberlake, were husband and wife, and enjoyed a fulfilling and
happy marriage relationship.  As a result of the negligence of the Defendants, and the consequent
injuries suffered by Calvin Timberlake, Plaintiff Karen Timberlake, has suffered a substantial
loss of consortium, and has suffered a substantial impairment of the affection, solace, comfort,
companionship, society, assistance and sexual relations necessary to a successful marriage.
Plaintiff,  Karen Timberlake has suffered grief and mental anguish, loss of contributions, both by
way of money and advise, labor, services, and counsel and has been damaged as a result thereof
in an amount greater than the minimum jurisdictional amount of this Court for which amount she
now sues.

### X.  Exemplary Damages

69.    The above-referenced acts and/or omissions, when viewed objectively from the
standpoint of the Defendants at the time of the occurrence, involved an extreme degree of risk,
considering the probability and magnitude of potential harm to others, and were of such a nature
that Defendants had, or should have had, a subjective awareness of the risks involved, but
nevertheless proceeded with malice and conscious indifference to the rights, safety, and welfare
of others, including but not limited to the Plaintiffs.  Plaintiffs hereby invoke the benefits and
protection of Chapter 41 (TCPRC).

### XI. Jury Demand

70.    By reason of the above and foregoing, Plaintiffs has been damaged in a sum in excess of
the minimum jurisdictional limits of this Court.

71.    WHEREFORE, Plaintiffs pray that the Defendants be duly cited to appear and answer
herein; that upon a final trial of this cause, Plaintiffs will recover:

1.    Judgment against Defendants for Plaintiffs' damages as set forth above, in an amount in

       excess of the minimum jurisdictional limits of this Court;

2.    Interest on said judgment at the legal rate from date of judgment;

3.    Pre-judgment interest as allowed by law;

4.    Costs of Court; and

5.    Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

COLE, COLE & EASLEY, P.C.
302 W. Forrest Street
PO Drawer 510
Victoria, Texas 77902
Phone:  (361) 575-0551
Fax:     (361) 575-0986

By: _____
        JIM COLE
        State Bar No. 04538500
        Federal I.D. No. 5883
        Rex Easley Jr.
        State Bar No. 06358425
        Federal I.D. No. 5886
        William L. Sciba Jr.
        State Bar No. 00792824
        Federal I.D. No. 19044

**CERTIFICATE OF SERVICE**

By my signature above, I certify that a true and correct copy of the foregoing instrument was delivered to

all counsel of record in accordance with the applicable Federal Rules of Civil Procedure on this the

____21____ day of ___February___, 2008.

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Southern District of California

Calvin Timberlake and Karen Timberlake

V.

Synthes Spine, Inc. and Synthes North America, Inc.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 6:08-CV-00004(S.D. Tex)

TO:  Raymond J. Linovitz, M.D., F.A.C.S.
CORE Orthopedic Medical Center
320 Santa Fe Drive, Suite 204
Encinitas, CA  92024-5179

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

320 Santa Fe Drive, Suite 204
Encinitas, CA  92024-5179
or another location agreed to by the parties

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | 3/13/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jim Cole, Cole, Cole & Easley, P.C.
302 W. Forrest, P.O. Box 510, Victoria, Texas  77902       Telephone Number: 361-575-0551

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
    The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT "A"

## INSTRUCTIONS

1.    Singular and masculine forms of any nouns or pronouns shall embrace and be applied as the plural or as the feminine or neuter, as appropriate to the context, and vice-versa.

2.    Each category is to be construed and responded to independently and not to be referenced to any other item herein for purposes of limitation.

3.    Documents produced pursuant to this request should be tendered either in the precise form or manner as they are kept in the usual course of business or organized and labeled to correspond with the categories which follow.

4.    If you (or any of your representatives, attorneys or agents) have ever had any of the documents requested in your possession, custody or control, but at the present do not have these documents in your possession, custody or control, you are requested to state the following with respect to each such document or material:

    a.    The present location thereof, if known;

    b.    The date each such document or material left your possession, custody or control;

    c.    The reasons why each such document or material left your possession, custody or control; and

    d.    The names and addresses of all persons having knowledge about the matters inquired about in the immediately preceding subparagraphs a - c.

5.    If any document or material requested herein has been destroyed or lost, you are requested to describe in detail the circumstances of, and the reasons for, such destruction or loss and to produce all documents which relate to either the circumstances or the reasons for such destruction or loss.

## DEFINITIONS

1.      As used herein, the terms "you" or "your" shall mean RAYMOND J. LINOVITIZ, M.D., F.A.C.S. and/ or CORE ORTHOPEDIC MEDICAL CENTER and its present or former agents, representatives, attorneys, present or former officers, directors, agents, representatives, employees or other persons acting on its behalf, including any other person or entity which acquired stock, assets or liability of CORE ORTHOPEDIC MEDICAL CENTER or any other person or entity acting on behalf, singularly or combined.

2.      As used herein, the term "person" shall mean and include any individual association, firm, partnership, corporation, trust, board, committee, company, agency or commission, or any other legal entity of any type, or any other organization or entity, whether public or private.

3.      The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include:  affidavits; agendas; agreements; analyses; announcements; bills; statements; and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks; vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams, teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the

contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

4.    As used here in "ProDisc" shall mean the total disc replacement medical device currently manufactured by Synthes or any predecessor of that medical device.

5.    "Any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc" includes but is not limited to entities with "Spine Solutions," "Spine Partners," "Spine Solutions Partners, " "Spinal Partners," Viscogliosi" or any variation or combination of those names.

## DOCUMENT REQUEST

1.    All documents relating to your investment, or potential investment, in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, correspondence, solicitations, investor packets, stock certificates, ownership certificates, shareholder agreements, and loan documents.

2.    All financial documents relating to your investment in, purchase or sale of your ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, bank records, canceled checks, income tax returns and loan documentation.

3.    All documents relating to any agreements with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform, clinical trials or other trials relating to the ProDisc.

4.    All financial documents pertaining to your agreement with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform clinical trials or other trials on the ProDisc.

5.    All documents relating to your relationship with Synthes, Inc. or any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to stock ownership, and agreements to market, sell or implant ProDisc.

6.    All documents you filed with or provided to the Food and Drug Administration that discuss mention or in any way relate to ProDisc.

7.    All documents filed with or provided to the FDA that discloses, discusses or denies that you have or had an ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc that has or had a financial interest in ProDisc.

8.    All correspondence between you and the FDA that relate in any way to ProDisc.

9.    All correspondence that relates to ProDisc between you and any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc.

SAO88 (Rev. 12/07) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT
### Southern District of California

Calvin Timberlake and Karen Timberlake

V.

Synthes Spine, Inc. and Synthes North America, Inc.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 6:08-CV-00004(S.D. Tex)

TO: Timothy A. Peppers, M.D.
    CORE Orthopedic Medical Center
    320 Santa Fe Drive, Suite 204
    Encinitas, CA 92024-5179

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

320 Santa Fe Drive, Suite 204
Encintis, CA 92024-5179
or another location agreed to by the parties

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | 3/13/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jim Cole, Cole, Cole & Easley, P.C.
302 W. Forrest, P.O. Box 510, Victoria, Texas 77902    Telephone Number: 361-575-0551

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

| | | |
|---|---|---|
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT "A"

## INSTRUCTIONS

1.     Singular and masculine forms of any nouns or pronouns shall embrace and be applied as the plural or as the feminine or neuter, as appropriate to the context, and vice-versa.

2.     Each category is to be construed and responded to independently and not to be referenced to any other item herein for purposes of limitation.

3.     Documents produced pursuant to this request should be tendered either in the precise form or manner as they are kept in the usual course of business or organized and labeled to correspond with the categories which follow.

4.     If you (or any of your representatives, attorneys or agents) have ever had any of the documents requested in your possession, custody or control, but at the present do not have these documents in your possession, custody or control, you are requested to state the following with respect to each such document or material:

    a.    The present location thereof, if known;

    b.    The date each such document or material left your possession, custody or control;

    c.    The reasons why each such document or material left your possession, custody or control; and

    d.    The names and addresses of all persons having knowledge about the matters inquired about in the immediately preceding subparagraphs a - c.

5.     If any document or material requested herein has been destroyed or lost, you are requested to describe in detail the circumstances of, and the reasons for, such destruction or loss and to produce all documents which relate to either the circumstances or the reasons for such destruction or loss.

## DEFINITIONS

1.    As used herein, the terms "you" or "your" shall mean TIMOTHY A. PEPPERS, M.D. and/ or CORE ORTHOPEDIC MEDICAL CENTER and its present or former agents, representatives, attorneys, present or former officers, directors, agents, representatives, employees or other persons acting on its behalf, including any other person or entity which acquired stock, assets or liability of CORE ORTHOPEDIC MEDICAL CENTER or any other person or entity acting on behalf, singularly or combined.

2.    As used herein, the term "person" shall mean and include any individual association, firm, partnership, corporation, trust, board, committee, company, agency or commission, or any other legal entity of any type, or any other organization or entity, whether public or private.

3.    The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills; statements; and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks; vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams, teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the

contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

4.     As used here in "ProDisc" shall mean the total disc replacement medical device currently manufactured by Synthes or any predecessor of that medical device.

5.     "Any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc" includes but is not limited to entities with "Spine Solutions," "Spine Partners," "Spine Solutions Partners, " "Spinal Partners," Viscogliosi" or any variation or combination of those names.

## DOCUMENT REQUEST

1.     All documents relating to your investment, or potential investment, in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, correspondence, solicitations, investor packets, stock certificates, ownership certificates, shareholder agreements, and loan documents.

2.     All financial documents relating to your investment in, purchase or sale of your ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, bank records, canceled checks, income tax returns and loan documentation.

3.     All documents relating to any agreements with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform, clinical trials or other trials relating to the ProDisc.

4.     All financial documents pertaining to your agreement with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform clinical trials or other trials on the ProDisc.

5.     All documents relating to your relationship with Synthes, Inc. or any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to stock ownership, and agreements to market, sell or implant ProDisc.

6.     All documents you filed with or provided to the Food and Drug Administration that discuss mention or in any way relate to ProDisc.

7.     All documents filed with or provided to the FDA that discloses, discusses or denies that you have or had an ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc that has or had a financial interest in ProDisc.

8.    All correspondence between you and the FDA that relate in any way to ProDisc.

9.    All correspondence that relates to ProDisc between you and any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc.

**EXHIBIT C**

SAO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Eastern District of Texas

Calvin Timberlake and Karen Timberlake

V.

Synthes Spine, Inc. and Synthes North America, Inc.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  6:08-CV-00004(S.D. Tex.)

TO:  Texas Back Institute/Texas Health Research Institute
Texas Back Institute Venture IV LLC
6300 W. Parker Road, Suite 100
Plano, Texas  75093

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

6300 W. Parker Road, Suite 100
Plano, Texas  75093
or another location agreed to by the parties

| PLACE | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | 3/13/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jim Cole, Cole, Cole & Easley, P.C.
302 W. Forrest, P.O. Box 510, Victoria, Texas  77902    Telephone: 361-575-0551

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT "A"

## INSTRUCTIONS

1.      Singular and masculine forms of any nouns or pronouns shall embrace and be applied as the plural or as the feminine or neuter, as appropriate to the context, and vice-versa.

2.      Each category is to be construed and responded to independently and not to be referenced to any other item herein for purposes of limitation.

3.      Documents produced pursuant to this request should be tendered either in the precise form or manner as they are kept in the usual course of business or organized and labeled to correspond with the categories which follow.

4.      If you (or any of your representatives, attorneys or agents) have ever had any of the documents requested in your possession, custody or control, but at the present do not have these documents in your possession, custody or control, you are requested to state the following with respect to each such document or material:

  a.      The present location thereof, if known;
  b.      The date each such document or material left your possession, custody or control;
  c.      The reasons why each such document or material left your possession, custody or control; and
  d.      The names and addresses of all persons having knowledge about the matters inquired about in the immediately preceding subparagraphs a - c.

5.      If any document or material requested herein has been destroyed or lost, you are requested to describe in detail the circumstances of, and the reasons for, such destruction or loss and to produce all documents which relate to either the circumstances or the reasons for such destruction or loss.

## DEFINITIONS

1.    As used herein, the terms "you" or "your" shall mean THE TEXAS BACK INSTITUTE and/or TEXAS HEALTH RESEARCH INSTITUTE and/or TEXAS BACK INSTITUTE VENTURE IV LLC and its present or former agents, representatives, attorneys, present or former officers, directors, agents, representatives, employees or other persons acting on its behalf, including any other person or entity which acquired stock, assets or liability of THE TEXAS BACK INSTITUTE and/or TEXAS HEALTH RESEARCH INSTITUTE and/or TEXAS BACK INSTITUTE VENTURE IV LLC or any other person or entity acting on behalf, singularly or combined.

2.    As used herein, the term "person" shall mean and include any individual, association, firm, partnership, corporation, trust, board, committee, company, agency or commission, or any other legal entity of any type, or any other organization or entity, whether public or private.

3.    The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person.   The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter.   It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.   For purposes of illustration and not limitation, the term shall include:   affidavits; agendas; agreements; analyses; announcements; bills; statements; and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks; vouchers; receipts and other records of payments; charts; drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers; journals; balance sheets; profit and loss statements, and other sources of financial data; letters; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams, teletypes and other communications sent or received;

transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

4.    As used here in "ProDisc" shall mean the total disc replacement medical device currently manufactured by Synthes or any predecessor of that medical device.

5.    "Any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc" includes but is not limited to entities with "Spine Solutions," "Spine Partners," "Spine Solutions Partners, " "Spinal Partners," Viscogliosi" or any variation or combination of those names.

## DOCUMENT REQUEST

1.    All documents relating to your investment, or potential investment, in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, correspondence, solicitations, investor packets, stock certificates, ownership certificates, shareholder agreements, and loan documents.

2.    All financial documents relating to your investment in, purchase or sale of your ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, bank records, canceled checks, income tax returns and loan documentation.

3.    All documents relating to any agreements with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform, clinical trials or other trials relating to the ProDisc.

4.    All financial documents pertaining to your agreement with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform clinical trials or other trials on the ProDisc.

5.    All documents relating to your relationship with Synthes, Inc. or any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to stock ownership, and agreements to market, sell or implant ProDisc.

6.    All documents you filed with or provided to the Food and Drug Administration that discuss mention or in any way relate to ProDisc.

7.    All documents filed with or provided to the FDA that discloses, discusses or denies that you have or had an ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc that has or had a financial interest in ProDisc.

    8.    All correspondence between you and the FDA that relate in any way to ProDisc.

    9.    All correspondence that relates to ProDisc between you and any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc.

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### Eastern District of Texas

| | |
|---|---|
| Calvin Timberlake and Karen Timberlake | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Synthes Spine, Inc. and Synthes North America, Inc. | Case Number:[1] 6:08-CV-00004(S.D. Tex.) |

TO:  Jack Zigler, M.D.
6020 W. Parker Road, Suite 200
Plano, Texas  75093

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

6020 W. Parker Road, Suite 200
Plano, Texas  75093
or another location agreed to by the parties

| PLACE | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_                        Attorney for Plaintiff | 3/13/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jim Cole, Cole, Cole & Easley, P.C.
302 W. Forrest, P.O. Box 510, Victoria, Texas  77902     Telephone: 361-575-0551

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT "A"

## INSTRUCTIONS

1.      Singular and masculine forms of any nouns or pronouns shall embrace and be applied as the plural or as the feminine or neuter, as appropriate to the context, and vice-versa.

2.      Each category is to be construed and responded to independently and not to be referenced to any other item herein for purposes of limitation.

3.      Documents produced pursuant to this request should be tendered either in the precise form or manner as they are kept in the usual course of business or organized and labeled to correspond with the categories which follow.

4.      If you (or any of your representatives, attorneys or agents) have ever had any of the documents requested in your possession, custody or control, but at the present do not have these documents in your possession, custody or control, you are requested to state the following with respect to each such document or material:

  a.      The present location thereof, if known;
  b.      The date each such document or material left your possession, custody or control;
  c.      The reasons why each such document or material left your possession, custody or control; and
  d.      The names and addresses of all persons having knowledge about the matters inquired about in the immediately preceding subparagraphs a - c.

5.      If any document or material requested herein has been destroyed or lost, you are requested to describe in detail the circumstances of, and the reasons for, such destruction or loss and to produce all documents which relate to either the circumstances or the reasons for such destruction or loss.

## DEFINITIONS

1.    As used herein, the terms "you" or "your" shall mean Jack Zigler, M.D. and his present or former agents, representatives, attorneys, present or former officers, directors, agents, representatives, employees or other persons acting on his behalf, or any other person or entity acting on his behalf, singularly or combined.

2.    As used herein, the term "person" shall mean and include any individual association, firm, partnership, corporation, trust, board, committee, company, agency or commission, or any other legal entity of any type, or any other organization or entity, whether public or private.

3.    The term "documents" shall mean all writings of every kind, source, and authorship, both originals and all nonidentical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills; statements; and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks; vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries; drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds, to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including published books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statement of bank accounts; statements, interviews; stock transfer ledger; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams, teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

4.    As used here in "ProDisc" shall mean the total disc replacement medical device currently manufactured by Synthes or any predecessor of that medical device.

5.    "Any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc" includes but is not limited to entities with "Spine Solutions," "Spine Partners," "Spine Solutions Partners, " "Spinal Partners," Viscogliosi" or any variation or combination of those names.

## DOCUMENT REQUEST

1.    All documents relating to your investment, or potential investment, in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, correspondence, solicitations, investor packets, stock certificates, ownership certificates, shareholder agreements, and loan documents.

2.    All financial documents relating to your investment in, purchase or sale of your ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to, bank records, canceled checks, income tax returns and loan documentation.

3.    All documents relating to any agreements with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform, clinical trials or other trials relating to the ProDisc.

4.    All financial documents pertaining to your agreement with any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, to perform clinical trials or other trials on the ProDisc.

5.    All documents relating to your relationship with Synthes, Inc. or any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc, including but not limited to stock ownership, and agreements to market, sell or implant ProDisc.

6.    All documents you filed with or provided to the Food and Drug Administration that discuss mention or in any way relate to ProDisc.

7.    All documents filed with or provided to the FDA that discloses, discusses or denies that you have or had an ownership interest in any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc that has or had a financial interest in ProDisc.

8.    All correspondence between you and the FDA that relate in any way to ProDisc.

9.    All correspondence that relates to ProDisc between you and any company or entity known to you or believed by you to have any relationship, ownership or other involvement with ProDisc.